BLD-078                                                          NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3746
_____

CURTIS NAPIER,
                                          Appellant

v.

WARDEN WILLIAM SCISM
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-10-cv-01231)
District Judge:  Honorable James M. Munley
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
December 30, 2011
Before:  SCIRICA, SMITH and CHAGARES, Circuit Judges

(Filed: January 13, 2012)
_____

OPINION OF THE COURT
_____

PER CURIAM.

        Curtis Napier appeals the District Court's denial of his 28 U.S.C. § 2241 petition

for habeas corpus relief.  We will affirm.

        As we write primarily for the parties, who do not dispute the District Court's

factual recitation, we adopt by reference the District Court's exhaustive effort.  See

Napier v. Scism, No. 10–1231, 2011 WL 3875990, at *1–2 (M.D. Pa. Aug. 31, 2011).

To briefly recapitulate, Napier was arrested by federal authorities in 1982; pleading guilty to the charge, he failed to appear for sentencing, but was apprehended by state authorities some months later for possession of stolen property and was taken into state custody. Federal authorities then borrowed Napier via writ of habeas corpus ad prosequendum, and he was sentenced on November 23, 1983, to a thirty-two-month term of imprisonment ("1983 sentence"), after which he was returned to state custody. Over the next few years, Napier would receive several additional sentences on various state charges, the first of which appeared to recommend that he serve a term of incarceration "[c]oncurrent to [p]resent [s]entence." Later, in 1987, Napier was again borrowed by federal authorities for a second federal prosecution. He was found guilty, and on June 17, 1988, was sentenced to five years of incarceration "to run consecutive to State sentence defendant is presently serving and concurrent with Federal sentence" ("1988 sentence"). Released from state custody in 2009, Napier was received into federal custody, and the Bureau of Prisons (BOP) calculated a projected release date of November 2, 2012—a calculation Napier believed to be in error, and which he challenged administratively to no avail.

In his habeas petition, Napier argued that his aggregate federal sentences should have been calculated by the BOP to have run from 1983. See, e.g., Pet. 12 ("Because if [the BOP] concedes that the first Federal sentence began in 1983, it must also concede that the second Federal sentence imposed in 1988, likewise started in 1983, the latter was

2

'ORDERED' to run concurrent with the former."). Napier asked for "credit toward his Federal sentence for time served while in State prison." Pet. 12. The District Court found Napier's complex argument, which involved matters of temporary and permanent relinquishment of jurisdiction and custody, to be meritless:

> Napier remained in state custody until the completion of his state sentence and his federal sentences did not commence running until July 8, 2009, the date on which he was received into the custody of the federal authorities. Consequently, the petition will be denied because his [federal] sentence was properly computed as having commenced on July 8, 2009, and he is not entitled to any sentence credit.

Napier, 2011 WL 3875990, at *3. This appeal followed.

Napier correctly brought his sentence-computation challenge under 28 U.S.C. § 2241. See Barden v. Keohane, 921 F.2d 476, 478–79 (3d Cir. 1990). We "exercise plenary review over the District Court's legal conclusions and apply a clearly erroneous standard to its findings of fact." See O'Donald v. Johns, 402 F.3d 172, 173 n.1 (3d Cir. 2005) (per curiam).

Having reviewed the record, we agree with the District Court's reasoning. "Determination of priority of custody and service of sentence between state and federal sovereigns is a matter of comity to be resolved by the executive branches of the two sovereigns." United States v. Warren, 610 F.2d 680, 684 (9th Cir. 1980). Napier's arguments, which are based on his theory that the federal authorities never "relinquished" custody to the state after he failed to appear for his original sentencing hearing, are undermined by his return to state custody after the imposition of each federal sentence

3

and the associated lodging of a detainer. "A prisoner detained pursuant to a writ ad prosequendum is considered to remain in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the person." Ruggiano v. Reish, 307 F.3d 121, 125 n.1 (3d Cir. 2002), superseded on other grounds by U.S.S.G. § 5G1.3(c) cmt. n.3(E) (2003). Thus, to the extent that Napier was in the primary custody of the state when he was first presented to the federal tribunal for sentencing, he remained in the primary custody of the state; and to the extent that his flight from federal authorities rendered him, in some way, subject to their primary custody, the record demonstrates that they intended to and did relinquish custody to the state.[1]

Moreover, we find it significant that even if Napier's custody argument with regard to his first sentence were correct, he would not be entitled to the relief he seeks. Assuming that Napier was indeed in federal custody at the time of the 1983 sentence, and assuming (as he insists) that the 1983 sentence commenced at the time it was imposed, a thirty-two-month term of imprisonment would have begun on November 23, 1983. This

---

[1] United States v. Croft, 450 F.2d 1094 (6th Cir. 1971), upon which Napier relies, is inapposite. In Croft, the defendant, after being sentenced, was incorrectly committed to state custody, not federal custody—an unintended error that, in effect, added several years to his sentence. Id. at 1096. At issue was the District Court's misimpression that it was "powerless" to fix the mistake. Id. at 1097. However, there was "no dispute over comity"; all parties recognized that the federal government had primary custody of the defendant, and the defendant was thus to be credited "for the time he served because of his *erroneous* delivery by the Sheriff to the state prison." Id. at 1099 (emphasis added). Here, the opposite is true: all parties appeared to act with the intent that the *state* assert primary custody. Nor is there any sign, as discussed further above the margin, that the District Judge who imposed the 1988 sentence did not "consider" that Napier should serve his full term.

4

sentence would have run concurrently with his state sentences until July 1986, when it would have been fully discharged. As discussed above, the 1988 sentence was to "run consecutive to [the still-ongoing] State sentence defendant is presently serving and concurrent with [the] Federal sentence." Napier asserts that the District Court's attempt to run the 1988 sentence concurrently with a federal sentence that had already been fully discharged means that "the 1988 sentence commenced in 1983 as well, not in 2009 as the Respondent has stated in its administrative denials." See Pet'r's Reply 3, ECF No. 10.

But this assumption is incorrect. Under 18 U.S.C. § 3568 (1982, repealed), which applied to Napier's pre-November-1987 federal offenses (and, therefore, to both of his federal sentences),[2] a sentence "shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence." We note, first, that while it appears to have been an open question at the time whether a District Judge had the authority to commence a sentence prior to the date it was pronounced,[3] we find no authority for the proposition that, under § 3568, a District Judge could impose a sentence that would be retroactively concurrent to a federal sentence that had been *fully* discharged. Indeed, as the 1988 sentence was clearly intended to be consecutive to Napier's lengthy state term of imprisonment, to assign it full retroactive

---

[2] See Gallardo v. Quinlan, 874 F.2d 186, 188 (3d Cir. 1989) (per curiam) (discussing the Comprehensive Crime Control Act).

[3] Compare Wilson v. Henderson, 468 F.2d 582, 584 (5th Cir. 1972) (per curiam), with United States ex rel. Del Genio v. U.S. Bureau of Prisons, 644 F.2d 585, 589 (7th Cir. 1980).

5

effect would be to assume that the presiding District Judge intended to impose a sentence that would, on one hand, be almost entirely discharged at the time of imposition, and on the other, run for its full five years from the end of Napier's state sentence. This absurd result is rather easily avoided by negating the possibility of full retroactivity—and, in any case, there is no evidence that a fully retroactive outcome was intended by the District Judge. Also, our holding in United States v. Campisi, 622 F.2d 697 (3d Cir. 1980), a similar case to the one at bar, suggests that regardless of the length of time remaining on the 1983 sentence, Napier's return to state prison after the 1988 sentence was imposed did not satisfy the condition of being returned to the correctional facility "*for service of such sentence*" for the purpose of the 1988 sentence's commencement. See id. at 699 (emphasis added). "[I]f § 3568 require[d] that every sentence commence upon a prisoner's receipt at a correctional facility, it would be most difficult, perhaps impossible, for a court to impose a sentence that is to run consecutively to an existing or contemporaneously imposed sentence." Id.

Finally, Napier's request for 32 months of credit on his current federal sentence is also unavailing. Under either scenario described above regarding the status of the 1983 sentence, he would not be entitled to the "double counting" that would result from granting such a credit. See Rios v. Wiley, 201 F.3d 257, 273 n.14 (3d Cir. 2000) (discussing double credit under § 3568), superseded on other grounds as stated in United States v. Saintville, 218 F.3d 246, 248–49 (3d Cir. 2000).

In sum, we agree with the District Court's outcome, while also observing that Napier's basic legal argument, even if true, would not entitle him to the relief he seeks. As this appeal presents no substantial question, we will summarily affirm the District Court's judgment. <u>Murray v. Bledsoe</u>, 650 F.3d 246, 248 (3d Cir. 2011) (per curiam); <u>see also</u> 3d Cir. L.A.R. 27.4; I.O.P. 10.6.