**James Ray THOMAS,**
**Petitioner–Appellant,**

v.

**R.D. BREWER, Warden, et al.,**
**Respondents–Appellees.**

No. 89–55498.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 1990.

Decided Jan. 17, 1991.

Diane Desfor, Law Student, U.S.C. Law Center, Charles D. Weisselberg, U.S.C. Law Center, Los Angeles, Cal., for petitioner-appellant.

John Libby, Asst. U.S. Atty., and Jimmye S. Warren, Asst. U.S. Atty., Los Angeles, Cal., for respondents-appellees.

Before REINHARDT, LEAVY, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

James Ray Thomas is a federal prisoner who appeals the district court's denial of his petition for writ of habeas corpus. He claims the right to immediate release on the ground that his federal sentence has been fully served.

At the time of his sentencing on federal charges August 4, 1964, Thomas was a state prisoner. He was transferred to federal authorities pursuant to a writ of habeas corpus ad prosequendum, which directed the defendant's return. After sentence was imposed committing Thomas for a diagnostic study under 18 U.S.C. § 4208(c), he was returned to state authorities. Having served state sentences, he was released to federal authorities for commitment November 23, 1966. The study was then conducted and a judgment after study was ultimately entered for a maximum term of twenty-five years.

Thomas contends that the district court erred in three respects: first, in determining that he was a state prisoner at the time of his federal sentencing; second, in concluding that his federal sentence did not commence under 18 U.S.C. § 3568 and that he was not entitled to credit toward his federal sentence from the time of his detention in the federal wing of the Los Angeles County Jail on the day of sentencing; and third, in failing to recognize that he should be credited from the date he was committed for study under 18 U.S.C. § 4208(c).

We hold on the facts in this case that the federal sentence began to run from November 21, 1966, the date on which Thomas was released by state authorities to federal custody for commitment, and affirm.

I

On May 10, 1964, James Ray Thomas was arrested by the San Gabriel, California Police for the armed robbery of a local supermarket. While in state custody on this charge, Thomas was charged in federal court with one count of armed bank robbery in violation of 18 U.S.C. § 2113(a), (b). On June 15, 1964, Thomas was brought before United States District Court Judge

Stephens on the bank robbery charge pursuant to a writ of habeas corpus ad prosequendum issued June 11, 1964.[1] On June 22, 1964, a second writ of habeas corpus ad prosequendum was issued requiring Thomas's appearance before Judge Stephens on June 23, 1964.[2]

On August 4, 1964, Thomas again appeared before Judge Stephens for sentencing after pleading guilty to one count of bank robbery. At this time, Thomas was being held in the federal wing of the Los Angeles County Jail. The record does not reflect whether a writ was used to secure Thomas's presence in the district court on August 4, 1964. On this date, however, Judge Stephens committed Thomas "to the custody of the Attorney General or his authorized representative for the maximum period prescribed by law for a study as described in Title 18, U.S.Code, § 4208(c), the results of such study to be furnished this court within three months whereupon

the sentence of imprisonment herein imposed shall be subject to modification in accordance with Title 18 U.S.Code, § 4208(b)."[3]

The federal marshal, subsequent to the sentencing, returned Thomas to the Los Angeles County Jail. On August 28, 1964, Thomas appeared before California Superior Court Judge Kaufman for sentencing on his guilty plea to assault with a deadly weapon. Judge Kaufman sentenced Thomas to two terms to run concurrent with each other. Judge Kaufman's judgment also recommended that Thomas be "released to the custody of the Federal Government (custody of the United States Attorney General)." On the judgment order form, following the standard printed language that "It is further Ordered that the defendant be remanded into the custody of the Director of Corrections at the California State Prison at Chino," were typed the words "when available."

1. This form writ commanded the warden, sheriff, or jailor of the Los Angeles County Jail to deliver Thomas to the federal courthouse on June 15, 1964,

  in order that said defendant in the above-entitled case may then and there be arraigned and enter his plea at said time and place, and also at such other times as may be ordered by said court, and have you then and there this writ. The delivery of the body of said James Ray Thomas to the Courtroom of said United States District Court, as aforesaid, and the return by you of said defendant to your custody shall be deemed sufficient compliance with the writ.

2. This second form writ employed the same language as the first in requiring Thomas's appearance on June 23, 1964.

3. Former sections 4208(b) and (c), which were in effect at the time of Thomas's sentencing, now appear with minor revisions as 18 U.S.C. § 4205(c) and (d) pursuant to the Parole Commission Reorganization Act of 1976. *See* 1976 U.S.Code Cong. & Admin.News (90 Stat. 219, 220). This section was repealed by Public Law 98–473, effective Nov. 1, 1986. In 1964, section 4208(b) and (c) provided:

  (b) If the court desires more detailed information as a basis for determining the sentence to be imposed, the court may commit the defendant to the custody of the Attorney General, which commitment shall be deemed to be for the maximum sentence of imprisonment prescribed by law, for a study as de-

scribed in subsection (c) hereof. The results of such study, together with any recommendations which the Director of the Bureau of Prisons believes would be helpful in determining the disposition of the case, shall be furnished to the court within three months unless the court grants time, not to exceed an additional three months, for further study. After receiving such reports and recommendations, the court may in its discretion: (1) Place the prisoner on probation as authorized by section 3651 of this title; or (2) affirm the sentence of imprisonment originally imposed, or reduce the sentence of imprisonment, and commit the offender under any applicable provision of law. The term of the sentence shall run from the date of the original commitment under this section.

  (c) Upon commitment of a prisoner sentenced to imprisonment under the provisions of subsection (a), the Director, under such regulations as the Attorney General may prescribe, shall cause a complete study to be made of the prisoner and shall furnish to the Board of Parole a summary report together with any recommendations which in his opinion would be helpful in determining the suitability of the prisoner for parole. This report may include but shall not be limited to data regarding the prisoner's previous delinquency or criminal experience, pertinent circumstances of his social background, his capabilities, his mental and physical health, and such other factors as may be considered pertinent. The Board of Parole may make such other investigation as it may deem necessary.
1958 U.S.Code Cong. & Admin.News 992.

Thomas was then returned to the custody of the Los Angeles County Sheriff. On February 11, 1965, Thomas appeared before Superior Court Judge Noble after pleading guilty to a charge of kidnapping for the purpose of robbery. Judge Noble sentenced Thomas "for the term of his natural life, which sentence is ordered to run concurrently with any sentence being served." Thomas was then taken to the California State Institution, Chino on February 23, 1965.

On November 23, 1966, Thomas was returned to U.S. marshals to enable concurrent service of Thomas's federal and state terms. On an unknown date in December 1966, Thomas was delivered to the Federal Correctional Institute, Lompoc, California, where the study ordered by Judge Stephens on August 4, 1964, was commenced. After completion of the three-month study, Thomas was placed in an "Out-to-Court" status on April 7, 1967 for return to the district court for the determination of his sentence. On September 21, 1967, Judge Stephens entered a "Judgment After Study," affirming the sentence of imprisonment for the maximum term of twenty-five years originally imposed on August 4, 1964. Thomas was then returned to the Federal Correctional Institution in Lompoc. On January 4, 1968, Thomas was received at the California State Prison, Folsom, Represa as a return from concurrent service. On December 13, 1974, Thomas was paroled by the State of California and turned over to the custody of the United States Marshals Service.

The United States Attorney General calculated Thomas's sentence as having commenced to run on November 23, 1966, the date Thomas was originally released from state prison and turned over to the custody of U.S. marshals for concurrent service. Based upon this determination, the Attorney General calculated Thomas's mandatory release date as April 19, 1991.

On April 4, 1988, Thomas filed a petition for a writ of habeas corpus in forma pauperis in the district court, pursuant to 28 U.S.C. § 1915(a). Thomas sought credit toward his federal sentence for the time he spent in state prison from August 4, 1964 to November 23, 1966. He also alleged that due to the miscalculation of his sentence, he was being held beyond the expiration of his term.

The Magistrate's report and recommendation was filed on February 2, 1989. The district court adopted the Report and Recommendation of the Magistrate and denied Thomas's petition on March 15, 1989. The Magistrate's Report determined that since Thomas was not in the custody of the United States until November 23, 1966, Thomas's sentence was correctly calculated. The Magistrate did not address Thomas's argument that his sentence commenced on August 4, 1964 based on the language of 18 U.S.C. § 3568 and former 18 U.S.C. § 4208.

On April 28, 1989, Thomas timely filed an appeal to this court.

## II

■ The district court's decision to grant or deny a petition for habeas corpus is reviewed de novo. *United States v. Popoola*, 881 F.2d 811, 812 (9th Cir.1989); *Norris v. Risley*, 878 F.2d 1178, 1180 (9th Cir.1989). To the extent it is necessary to review findings of fact, the clearly erroneous standard applies. *Norris*, 878 F.2d at 1180.

## III

### A

■ Thomas argues that he was in federal custody at the time of his initial federal sentencing on August 4, 1964, and that his federal sentence should therefore run from that date. He suggests that the manner in which he was brought into federal court, the express terms of the federal sentence imposed, and the language and intentions of the federal and state sentencing judges establish that he was in federal custody. In denying the petition for writ of habeas corpus, the district court concluded that "[i]t appears from the entire record that petitioner was in fact a state prisoner in the custody of the Los Angeles County Sheriff at the time he was brought out for

the purpose of his appearances in federal court ... [and] at the time he received his federal sentence." Thomas contends that this conclusion is clearly erroneous.

■ Thomas was first arrested by state authorities on May 10, 1964. As a general rule, the first sovereign to arrest a defendant has priority of jurisdiction for trial, sentencing, and incarceration. *See United States v. Warren*, 610 F.2d 680, 684–85 (9th Cir.1980). While in state custody, however, Thomas was charged in federal court with bank robbery. He appeared in federal court on June 15 and June 24, 1964, pursuant to specific writs of habeas corpus ad prosequendum. The record does not reveal a similar writ for the date August 4, 1964, at which time Thomas received an initial, tentative sentence under 18 U.S.C. § 4208. Thomas was subsequently sentenced in state court on August 28, 1964 and on February 11, 1965. He was released to United States Marshals on November 23, 1966, and taken to the federal penitentiary at Lompoc in December of that year. On September 21, 1967, Thomas was returned to Judge Stephens' court, at which time his final sentence following the § 4208 study was imposed.

Thomas argues that because writs were obtained for his two prior appearances, the absence of a writ for his August 4 appearance demonstrates that a writ was unnecessary. The only reason that a writ would be unnecessary, he suggests, is because state authorities had relinquished jurisdiction over him to federal authorities and he was already in federal custody.

We disagree. The second writ ad prosequendum, issued June 22, 1964, and commanding Thomas's appearance on June 23, also authorized his appearance on August 4, 1964. This writ commanded that Thomas be produced "in order that said defendant in the above-entitled case may then and there be arraigned and enter his plea at said time and place, *and also at such other times as may be ordered by the said court.*" [emphasis added]. It further provided that "[t]he delivery of the body of said James Ray Thomas to the courtroom of said United States District Court ...

*and the return by you of said defendant to your custody shall be deemed sufficient compliance with the writ.*" [emphasis added]. Because the writ provided for Thomas's appearance "at such other times as may be ordered by the court," and provided for his return to state custody, the most logical inference is that Thomas was ordered at his June 23, 1964 appearance to return for sentencing on August 4, 1964, that Thomas was simply retained in federal custody pursuant to the June 23, 1964 writ until August 4, and that after sentencing Thomas was returned to state custody, as required by the writ.

Thomas responds that the language of Judge Stephens' initial sentencing order committed him to the custody of the United States Attorney General, without acknowledging any qualifications on the Attorney General's ability to assert jurisdiction over Thomas, as would be the case if Thomas were in state custody. Therefore, he suggests that he was already in federal custody at that time.

The "Judgment After Study" issued by Judge Stephens on September 21, 1967, however, contains nothing to suggest that the court found the return of the study and the defendant to his court for final sentencing three years after the initial August 4, 1964 sentencing appearance, to be unusual or improper. Nor did Judge Stephens order that Thomas be credited with the time served in state custody. Presumably, had Thomas's transfer from his federal sentencing to state custody been inconsistent with the court's August 4, 1964 order, Judge Stephens would have noted it at this time.

Thomas further contends that the language and intentions of the state sentencing judges also reveals that he was in federal custody on August 4, 1964. First, he argues that Judge Kaufman's recommendation that "the defendant be released to the custody of the Federal Government (custody of the United States Attorney General)," implicitly recognizes that Thomas was a federal prisoner at the time of his state sentencing and shows an intent to impose a state sentence concurrent with

the federal sentence. Second, Thomas suggests that Judge Kaufman's order that Thomas be committed to the state prison "when available" establishes that he was not immediately available to serve his state sentence at that time, and therefore must have been a federal prisoner. Finally, that Judge Noble sentenced Thomas to time to be served "concurrently with any sentence being served" reveals, according to Thomas, an awareness of the federal sentence and an intent not to impede its running.

These suggestions are unpersuasive. Judge Kaufman's order recommended "that defendant be released to the custody of the Federal Government (custody of the United States Attorney General)." Had Thomas been in federal custody at that time, Judge Kaufman would not have needed to recommend that he be released to the federal government. Furthermore, the reason that Judge Kaufman ordered "that the defendant be in the custody of the Sheriff of the County of Los Angeles, to be by him delivered into the custody of the Director of Corrections at the California State Prison at Chino, *when available*," was that Thomas was next to be sentenced before Judge Noble, and not because Thomas was in federal custody at that time. The words "when available" are not typed on Judge Noble's form, because that sentencing order resolved all pending charges. Judge Noble therefore ordered Thomas remanded to the custody of the Sheriff of the County of Los Angeles, to be delivered to the custody of the Director of Corrections at Chino.

This conclusion is reinforced by the Sentence Data Record of the Bureau of Prisons (dated December 9, 1966), which indicates that Thomas's federal sentence was entered August 4, 1964, in the Central District, but does not begin until November 23, 1966. That record notes that "Defendant in State Custody when sentenced. Turned over to the U.S. Marshal 11–23–66."

Therefore, examining the record as a whole, we are unable to say that the district court's conclusion that Thomas was in state custody at the time of his initial federal sentencing on August 4, 1964 was clearly erroneous.

**B·**

■ Thomas argues that, even if his appearance for federal sentencing on August 4, 1964, were pursuant to a writ of habeas corpus ad prosequendum, no legal rule required his return to state court immediately after sentencing. Instead, he suggests that if state authorities surrender a prisoner to federal authorities, the state thereby grants the federal authorities jurisdiction to "try the [defendant] and to render judgment of imprisonment against him and to execute that judgment." *Stamphill v. Johnston*, 136 F.2d 291, 292 (9th Cir.), *cert. denied*, 320 U.S. 766, 64 S.Ct. 70, 88 L.Ed. 457 (1943). Thus, the "physical presence of a defendant before a District Court gives that court complete jurisdiction over him, regardless of how his presence was secured...." *Id.* at 292; *see also United States v. Warren*, 610 F.2d 680, 684 (9th Cir.1980); *United States v. Zammiello*, 432 F.2d 72, 73 (9th Cir.1970); *Smith v. Swope*, 91 F.2d 260 (9th Cir.1937).

Although Thomas correctly states the general rule, it is not dispositive in this case where the question is not whether the federal authorities properly exercised jurisdiction over a state prisoner in their physical possession, but whether state authorities abandoned their jurisdiction by transferring one of their prisoners pursuant to a writ ad prosequendum such that he became a federal prisoner from that point forward. Rather, this case is governed by *Gunton v. Squier*, 185 F.2d 470 (9th Cir.1950) and *Larios v. Madigan*, 299 F.2d 98 (9th Cir. 1962), which deal directly with the effect of producing a prisoner in state custody for sentencing in federal court on when the federal sentence is deemed to commence.

In *Gunton*, the defendant was arrested and taken into custody by state authorities, and held in the Los Angeles County Jail. He was brought before the federal district court pursuant to a writ of habeas corpus ad prosequendum, which required the defendant's production and his return to state custody following the completion of the

federal proceedings. The federal court sentenced him to two years imprisonment and returned him to state custody. Thereafter, he was sentenced to serve one year by the state court, which he immediately commenced to do. Upon completing his one year term in the county jail, the defendant was delivered to the United States Marshal to serve his two year federal term. The defendant argued that his federal sentence ran from the time he was returned to the Los Angeles County Jail, following his federal sentencing, to await delivery to the federal institution. We rejected this claim, holding that he was returned to the jurisdiction of the state authorities awaiting disposition of state proceedings; under 18 U.S.C. § 709a [Revised 18 U.S.C. § 3568], his federal sentence could not begin to run until he was delivered to and received by the U.S. Marshal at a place of detention to await transportation to the federal penitentiary. 185 F.2d at 471.

Similarly in *Larios*, the defendant, who was incarcerated in a state prison, was brought before the federal court for trial and sentencing pursuant to a writ of habeas corpus ad prosequendum. Following sentencing, he was returned to state prison. The defendant thereafter claimed that by the terms of the federal court judgment, he had been committed to the custody of the Attorney General for the purpose of serving his federal sentence. That judgment stated, "It is adjudged that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of two years." The court, relying upon *Gunton*, rejected this argument.[4]

Other recent cases are in accord. *See, e.g. Crawford v. Jackson*, 589 F.2d 693, 695

(D.C.Cir.1978), *cert. denied*, 441 U.S. 934, 99 S.Ct. 2056, 60 L.Ed.2d 662 (1979):

> When an accused is transferred pursuant to a writ of habeas corpus ad prosequendum he is considered to be "on loan" to the federal authorities so that the sending state's jurisdiction over the accused continues uninterruptedly. Failure to release a prisoner does not alter that "borrowed" status, transforming a state prisoner into a federal prisoner.

*See also Morgan v. United States*, 380 F.2d 686, 693 (9th Cir.1967), *cert. denied*, 390 U.S. 962, 88 S.Ct. 1064, 19 L.Ed.2d 1160 (1968).

We conclude that Thomas remained a state prisoner and that he was not improperly returned to state custody after his federal sentence was imposed.

### IV

■■■■ Thomas also contends that he is entitled to credit toward his federal sentence under former 18 U.S.C. § 4208(b).[5] He argues that the language of § 4208 (and of Judge Stephens's August 4, 1964 sentencing order) is mandatory: the study *shall* be furnished to the court within three months time, unless an extension of up to three months is granted by the court. Thus, he claims that the law required that he be returned to the federal district court within three months for possible modifications to his sentence, and that his federal sentence therefore started to run on August 4, 1964. Thomas suggests that the only reason he was not returned was due to the marshal's error in relinquishing custody of Thomas to the state authorities; such an error by the marshal cannot postpone the start of a sentence. *See Green v. Christiansen*, 732 F.2d 1397, 1400 (9th Cir.

---

**4.** Thomas argues that *Gunton* and *Larios* are distinguishable on the ground that they involved a "limited surrender" exception to the general *Stamphill* rule, which applies only if the state consents to relinquish the prisoner for a limited purpose, and requires his return to state custody once that purpose has been accomplished. *Citing Zerbst v. McPike*, 97 F.2d 253, 254 (5th Cir. 1938). Thomas maintains that this exception is not applicable here, and that this case falls directly under the general *Stamphill* rule. *Larios* makes no reference to the language of the

writ involved; it does not mention that the state explicitly required the defendant's return, and therefore cannot be distinguished on this ground. Conversely, the writ in *Stamphill* explicitly required the prisoner's return to state custody.

**5.** For the full text of this provision as it existed at the time of Thomas's sentencing, *see supra*, note 3.

1984); *Smith v. Swope*, 91 F.2d 260, 262 (9th Cir.1937) ("The prisoner is entitled to serve his time promptly if such is the judgment imposed, and he must be deemed to be serving it from the date he is ordered to serve it and is in the custody of the marshal under the commitment, if, without his fault, the marshal neglects to place him in the proper custody."); *Albori v. United States*, 67 F.2d 4, 7 (9th Cir.1933).[6]

Section 4208 provides on its face that "[t]he term of the sentence shall run from the date of original commitment under this section." However, in cases involving a study under section 4208, the initial sentence imposed is "wholly tentative." The sentence following the study and adopting, affirming or modifying the initial sentence is the "final sentence." *See United States v. Behrens*, 375 U.S. 162, 164, 84 S.Ct. 295, 296, 11 L.Ed.2d 224; *Walsh v. United States*, 374 F.2d 421, 424–26 (9th Cir.1967). Section 4208 simply assures that the defendant is given credit for the interim period during which the study is being conducted, between initial commitment and final judgment. Thus, in Thomas's case, the date of "original commitment" was November 23, 1966, when state authorities turned him over to federal authorities and he was delivered to the Federal Correctional Institute at Lompoc for the study—and not August 4, 1964, while Thomas was a state prisoner temporarily present in federal court pursuant to the writ of habeas corpus ad prosequendum.

V

Thomas's final contention is that he is entitled to credit toward his federal sentence under 18 U.S.C. § 3568. During the relevant time period, 18 U.S.C. § 3568 provided:

The sentence of imprisonment of any person convicted of an offense in a court of the United States shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of said sentence: *Provided,* That the Attorney General shall give any such person credit toward service of his sentence for any days spent in custody prior to the imposition of sentence by the sentencing court for want of bail set for the offense under which sentence was imposed where the statute requires the imposition of a minimum mandatory sentence.

If any such person shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, his sentence shall commence to run from the date on which he is received at such jail or other place of detention.

No sentence shall prescribe any other method of computing the term.

Under section 3568 Thomas's sentence could not have begun to run until he was received at an institution either to serve his sentence, or to be transported to another institution where his sentence was to be served.[7] Thomas contends that because he

---

6. *See also Smith v. Swope*, 91 F.2d 260 (time in state custody credited when defendant erroneously delivered to state authorities in face of specific federal court order of commitment to marshal to deliver defendant to federal penitentiary); *Hayward v. Looney*, 246 F.2d 56, 58 (10th Cir.1957); *United States v. Croft*, 450 F.2d 1094, 1097 (6th Cir.1971):

The general rule applicable to this case is that where a court has issued the mittimus and has given authority to the proper officer to enforce it, and such officer refuses to act on it, and turns the prisoner over to another jurisdiction, the court ... will refuse to find that the prisoner has not served his sentence, but will assume that he has served it, and will, in consequence, refuse authority for his further imprisonment.

7. *See United States v. Segal*, 549 F.2d 1293, 1301 (9th Cir.) ("a federal term cannot begin until a prisoner has been received by federal authorities"), *cert. denied*, 431 U.S. 919, 97 S.Ct. 2187, 53 L.Ed.2d 231 (1977); *United States v. Graham*, 538 F.2d 261, 265 (9th Cir.) ("Unless time is served in federal *custody*, it does not count as credit for time served under a federal sentence"), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 294 (1976); *Larios v. Madigan*, 299 F.2d 98, 99 (9th Cir.1962) ("The earliest date at which the federal sentence could begin to run was, by the terms of 18 U.S.C. § 3568, the date on which appellant was received at a place of detention 'to wait transportation to the place at which his sentence is to be served.'"); *Hayward v. Looney*, 246 F.2d 56, 58 (10th Cir.1957) (under § 3568, a "Federal sentence does not begin to run until such time as the prisoner is returned

was taken to the federal wing of the Los Angeles County Jail after his August 4 sentencing, the district court should have found that he was there awaiting transportation to a federal facility.

The district court did not clearly err in finding that Thomas was not held in the county jail for transport to a federal facility. He was there pursuant to the writ of habeas corpus ad prosequendum for plea and further proceedings in connection with it, and awaiting return to state authorities for sentencing on his state convictions. Thomas also argues that, under the terms of his sentence, he *should* have been transported to a federal facility rather than returned to state custody, but that the marshals made a mistake. *See Kiendra v. Hadden,* 763 F.2d 69, 73 (2d Cir.1985). There is no substantial evidence of error. In any event, as we have held, Thomas was properly returned to state authorities following his August 4, 1964 federal court appearance, in compliance with the second writ of habeas corpus ad prosequendum. Therefore, under the terms of section 3568, Thomas's sentence could not have begun to run until he was released by state authorities to the federal authorities for commitment in November 1966.

The district court's denial of Thomas's petition for writ of habeas corpus is

AFFIRMED.

REINHARDT, Circuit Judge, concurring in part and dissenting in part.

Although I do not agree with the majority opinion's reasoning, I concur in its judgment to the extent that it concludes that Thomas is not entitled to credit for the entire two year–3 month period he served in state prison following the imposition of the initial federal sentence. I dissent in part because the majority opinion fails to give Thomas credit for the three month period he should have been in federal cus-

tody in 1964 for the purpose of having a diagnostic study conducted.

When a federal court issues an order directing an officer to commit a federal prisoner to the custody of the Attorney General for a diagnostic study, or otherwise, the officer's failure to act in accordance with that order cannot be "charged up against the prisoner." *See Smith v. Swope,* 91 F.2d 260, 262 (9th Cir.1937). We held in *Smith* that

> the prisoner is entitled to serve his time promptly if such is the judgment imposed, and he must be deemed to be serving it from the date he is ordered to serve it and is in the custody of the marshal under the commitment, if, without his fault, the marshal neglects to place him in proper custody.

*Id.* The *Smith* court credited the defendant's federal sentence with the entire time served in state prison because the marshal, in contravention of the federal commitment order, prematurely turned him over to the state authorities.

Here, the district court's sentencing order stated that

> "[i]t is adjudged that the defendant hereby is committed to the custody of the Attorney General ... for imprisonment for the maximum period prescribed by law for a study ..., the results of such study to be furnished this court within three months whereupon the sentence of imprisonment herein imposed shall be subject to modification in accordance with Title 18, U.S.Code, section 4208(b)."

While the district court's order does not explicitly set forth the time at which the marshal shall commit Thomas to the Attorney General's custody, I think the court's intent is clear beyond dispute. The delivery was to be made at the earliest time the marshal could implement the necessary physical arrangements. I find it difficult

to Federal custody and received at the Federal penal institution for service of his Federal sentence"); *Gunton v. Squier,* 185 F.2d 470, 471 (9th Cir.1950) ("his Federal sentence could not start to run until he was delivered to and received by the United States Marshal at the place of detention to await transportation to the Fed-

eral penitentiary"); *Zerbst v. McPike,* 97 F.2d 253, 254 (5th Cir.1938) (under predecessor to § 3568, "federal sentence could begin to run only from 'the date on which [the defendant] is received at the penitentiary, reformatory or jail for service of said sentence'").

to believe that, given a choice, a district judge would direct that a diagnostic study not be conducted until several years after he has asked for it, or that he would ordinarily want to delay imposing a sentence for an undetermined number of years while the defendant serves a state sentence. Given the numerous criminal cases confronting a district judge and the difficulty of recalling all of the significant events that occur during a trial, it is far more likely that a district judge would order that the diagnostic study be conducted at the earliest possible date following initial sentencing so that he could impose a final sentence within a reasonable time after the conclusion of the plea or trial.[1]

Moreover, the language of the district court order appears to require the Attorney General, or his authorized representative, to furnish the results of the study within 90 days of the date on which the order was issued. The order does not state that the study may be conducted within 90 days of whenever Thomas is actually delivered to the Attorney General. Rather, it states that the results shall be furnished to the court within 3 months. An ordinary reading of such an order would lead one to conclude that the results shall be furnished within 3 months of the date the order was issued.[2]

If I am correct, the marshall erred in returning Thomas to the state authorities rather than in committing him to the custody of the Attorney General for the period required to conduct the study. The marshal's error cannot override the district court's order to the detriment of the defendant. *See Smith, supra.*

Thus, Thomas is entitled to credit for the three month period he should have been in federal custody in 1964 while a diagnostic study was being prepared. Such a holding

would grant him credit for the period prior to his scheduled return to federal court for final sentencing. However, following such final sentencing a final order of commitment would have issued and under applicable law the marshal would have been required to return Thomas to the custody of the state. Thus, he is not entitled to credit for any portion of the time he was serving his state sentence other than the three months that should have served as the study period. Accordingly, Thomas's mandatory release date should be January 19, 1991, rather than April 19, 1991.

This conclusion is not in derogation of any State interest. The State surrendered Thomas to federal authorities for sentencing proceedings, which included determination of a final sentence. As the majority notes, the results of the diagnostic study are necessary to transform a "wholly tentative" sentence into a final one. Moreover, no case law in this circuit undermines this conclusion. Neither *Gunton* nor *Larios*, for example, addresses the questions presented by this case—whether the district court had completed its sentencing proceedings and whether the district court intended to return Thomas to the state authorities prior to final sentencing.

In light of the foregoing, I respectfully dissent in part from the majority judgment.

---

**1.** The order quoted above appears to be a form order rather than one tailored especially to the circumstances of Thomas's case.

**2.** Similarly, the statutory language of 18 U.S.C. section 4208 appears to mandate that the diagnostic study be conducted within 90 days of the date on which the trial court enters the tentative sentence. Section 4208 provides that "[t]he results of the study ... shall be furnished to the

court within three months unless the court grants time, not to exceed an additional three months, for further study." Any concern that this reading of the statute may shorten the actual time available for conducting the study is alleviated by the fact that the court may extend the period for study for up to three additional months.