990 F.2d 1259
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
David Paul REUMONT, Petitioner-Appellant,
v.
Eddie YLST, Warden, Respondent-Appellee.
 No. 92-55700.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 4, 1993.*
Decided March 18, 1993.
 
 1
 Before D.W. NELSON, WIGGINS and LEAVY, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 Petitioner, David Paul Reumont, was convicted on two counts of lewd and lascivious acts with a child under age fourteen and two counts of oral copulation with a child under age fourteen. He was sentenced to twelve years in the California State penal system. Reumont filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court dismissed the action on the merits. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 2253. We affirm.
 
 FACTS
 
 4
 After Reumont's conviction and sentence, a post-conviction evidentiary hearing was held to show cause why Reumont was not entitled to relief pursuant to In re Martin, 44 Cal.3d 1, 744 P.2d 374, 241 Cal.Rptr. 263 (1987). In re Martin deals with interference with defense witnesses. After the post-conviction evidentiary hearing, the state court concluded that Reumont's various allegations regarding government interference with witnesses were not substantiated.
 
 
 5
 Reumont filed a petition for writ of habeas corpus. After, among other things, a transfer, a traverse, a ruling on exhaustion, a Magistrate Judge's recommendation and report that was withdrawn, a supplemental petition for writ of habeas corpus, and a revised habeas petition in which Reumont concisely set forth his grounds for relief, the district court dismissed the petition on the merits. Reumont appeals.
 
 DISCUSSION
 
 6
 The decision whether to grant or deny a petition for writ of habeas corpus is reviewed de novo. Thomas v. Brewer, 923 F.2d 1361, 1364 (9th Cir.1991). "To the extent it is necessary to review findings of fact, the clearly erroneous standard applies." Id.
 
 
 7
 In his petition and briefs, Reumont advances a plethora of claims challenging his detention in the California State penal system. Because each of these claims lacks merit, we reject them in turn.
 
 
 8
 I. The District Court Did Not Err in Excusing Defense Witnesses Jeffery and Williams After They Invoked Their Fifth Amendment Privilege Against Self-Incrimination
 
 
 9
 Reumont first claims that the trial court improperly excused defense witnesses Jeffery and Williams after they invoked their Fifth Amendment privilege against self-incrimination.
 
 
 10
 "To assert the privilege against self-incrimination, the claimant must be 'confronted by substantial and "real," and not merely trifling or imaginary, hazards of incrimination.' " United States v. Paris, 827 F.2d 395, 398 (9th Cir.1987) (quoting United States v. Apfelbaum, 445 U.S. 115, 128 (1980) (in turn quoting Marchetti v. United States, 390 U.S. 39, 53 (1968)). Because it was demonstrated that testifying would expose both Jeffery and Williams to questioning about, and possibly to prosecution for, furnishing or selling drugs to a minor, they validly invoked their Fifth Amendment privileges against self-incrimination.
 
 
 11
 When immunity was not offered, both witnesses were excused. "[T]he Sixth Amendment right of an accused to compulsory process to secure the attendance of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege. Nor is an accused entitled to compel a prosecutor to grant immunity to a potential defense witness to get him to testify." Id. at 399 (quoting United States v. Trejo-Zambrano, 582 F.2d 460, 464 (9th Cir.), cert. denied, 439 U.S. 1005 (1978)). Because Reumont cannot show that the "prosecutor has abused the government's ability to grant immunity by using it in a discriminatory fashion for the purpose of gaining a tactical advantage," Blisset v. Lefevre, 924 F.2d 434, 442 (2d Cir.), cert. denied, 112 S.Ct. 158 (1991), we reject all of Reumont's claims regarding Jeffery's and William's invocation of their Fifth Amendment privilege against self-incrimination, be those claims couched in terms of due process, equal protection, or some other guise.
 
 
 12
 II. Prosecutorial Misconduct Did Not Cause Defense Witness Jeffery to Invoke His Fifth Amendment Privilege Against Self-Incrimination
 
 
 13
 Reumont next claims that Jeffery invoked his Fifth Amendment privilege against self-incrimination only after being threatened, intimidated, and coerced by the prosecution. If, in fact, prosecutorial misconduct led to Jeffery's invocation, then Reumont correctly claims that his due process rights to a fair trial were compromised. See, e.g., United States v. Lord, 711 F.2d 887, 891 (9th Cir.1983). However, we conclude that there was no prosecutorial misconduct.
 
 
 14
 At a state evidentiary hearing on this issue, Reumont testified that he witnessed the prosecution forcibly remove Jeffery by the elbow from the courtroom to the hallway where the prosecution threatened Jeffery ("If you testify, I will arrest you for selling drugs to Gloria Adams or accessory to murder."). However, neither Deputy Renner, Reumont's attorney, nor Jeffery himself corroborated Reumont's account.[1] In fact, Jeffery chose to invoke his Fifth Amendment privilege against self-incrimination only after consultation with his attorney. At most, the record shows that Jeffery was warned that if he testified he might incriminate himself. Because the record does not support Reumont's claim of prosecutorial misconduct, we reject it and all other claims he has made that are related thereto, be they couched in terms of due process, equal protection, or some other guise.
 
 
 15
 III. Reumont's Sixth Amendment Confrontation Rights Were Not Violated
 
 
 16
 Reumont next claims that his Sixth Amendment confrontation rights were violated because he was excluded from a preliminary hearing involving Williams and because his view of victim Gloria Adams was obstructed during her trial testimony.
 
 
 17
 Because he was excused after invoking his Fifth Amendment privilege against self-incrimination, Williams did not testify at Reumont's trial. In addition, none of the testimony Williams offered was admitted at Reumont's trial. Because "[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact," Maryland v. Craig, 497 U.S. 836, 845 (1990), there was no Confrontation Clause violation with respect to Williams.
 
 
 18
 Nor was there any Confrontation Clause violation with respect to Adams's trial testimony. The record does not support Reumont's contention that the seating was arranged so as to prevent him from seeing her during her trial testimony. Reumont was present at all times during Adams's testimony. Moreover, Adams was clearly able to see Reumont while she testified. When asked to make an identification, she pointed directly at Reumont and said "right there. He is wearing a different colored shirt." Finally, at one point during the trial, the prosecuting attorney advised the court that Reumont had been gesturing toward Adams during her testimony. Adams confirmed this. We reject Reumont's Confrontation Clause claims.
 
 
 19
 IV. There Was No Due Process Violation in the District Court's Denial of Reumont's Motion for a Mistrial
 
 
 20
 During her trial testimony, Adams offered surprise testimony that Reumont had prostituted her to John Ripley. The prosecution then investigated the incident and decided to call Ripley as a witness. Reumont claims that he was denied due process by the denial of defense counsel's motion for a mistrial. Because defense counsel was given time to prepare for Ripley, we conclude that there was no due process violation in denying the motion for a mistrial.
 
 
 21
 Reumont also appears to claim that he was denied due process when his defense counsel was not granted a continuance of sufficient duration to allow him properly to prepare for Ripley. We note that the denial of a continuance warrants habeas relief only if there was an abuse of discretion and the denial was so arbitrary and fundamentally unfair that it violates constitutional principles of due process. Schrader v. Whitley, 904 F.2d 282, 288 (5th Cir.), cert. denied, 111 S.Ct. 265 (1990). Where, as here, defense counsel was granted his requested continuance, Reumont cannot meet this or any other standard. We reject Reumont's mistrial and continuance claims.
 
 
 22
 V. Reumont's Requested Jury Instruction Was not Improperly Denied
 
 
 23
 Reumont next claims that he was denied due process when the court failed to give an instruction[2] allowing the jury to draw an adverse inference from the prosecution's failure to call Williams to testify.
 
 
 24
 A jury instruction error in a state criminal proceeding warrants habeas relief only if it "so infected the entire trial that the resulting conviction violates due process." Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (citation omitted). Where, as here, the prosecution failed to call Williams as a witness only after he properly invoked his Fifth Amendment privilege against self-incrimination and immunity was not offered, Reumont did not deserve the proposed instruction. We reject Reumont's jury instruction claim.
 
 
 25
 VI. Prosecutorial Misconduct Did Not Lead to Admission of Reumont's Prior Sex Conviction
 
 
 26
 Reumont next claims that he was denied due process when, as a result of prosecutorial misconduct, Ripley testified that Reumont had a prior sex conviction. Reumont's claim is without merit.
 
 
 27
 First, the record does not support Reumont's allegation that the prosecution intentionally introduced Reumont's prior conviction through Ripley's testimony. In fact, Ripley's testimony was provided spontaneously in response to a question from defense counsel. Second, the trial court immediately and strongly cautioned the jury to disregard the statement made by Ripley. Because "[o]rdinarily cautionary instructions are sufficient to cure the effects of improper comments," United States v. Davis, 932 F.2d 752, 761 (9th Cir.1991), and because courts presume that juries follow such instructions, Richardson v. Marsh, 481 U.S. 200, 206 (1987), we conclude that Reumont's due process rights were not violated by Ripley's statement. We reject Reumont's prior conviction claim.
 
 
 28
 VII. The Evidence Was Sufficient to Support Reumont's Conviction
 
 
 29
 Reumont next claims that the evidence was insufficient to support his conviction. In reviewing a sufficiency of the evidence claim, we consider "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 30
 Viewed in the light most favorable to the prosecution, the evidence established that the victim, Gloria Adams, was a twelve year old girl, that Reumont befriended her and provided her with a place to stay, that Reumont had sex with her approximately twenty times and performed oral sex on her approximately ten times, and finally that Reumont arranged for her to have sex with other men. The evidence supports Reumont's conviction. We reject his challenge to the sufficiency of the evidence.
 
 
 31
 VIII. There Was No Error During the Post-Conviction Evidentiary Hearing
 
 
 32
 The state court held a post-conviction evidentiary hearing regarding Reumont's allegations that prosecutorial misconduct prevented Jeffery from testifying. Reumont claims that he was denied due process and equal protection when the state court made rulings at the hearing that were contrary to the evidence presented, namely, that Jeffery was not threatened, intimidated, or coerced into invoking his Fifth Amendment privilege against self-incrimination.
 
 
 33
 First, the state court's rulings are supported generously by the record. See Section II, supra. Second, alleged errors in the state post-conviction review process are not addressable through habeas corpus proceedings. Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir.) (per curiam), cert. denied, 493 U.S. 1012 (1989). We reject Reumont's post-conviction evidentiary hearing claim.
 
 
 34
 IX. Reumont Did Not Receive Ineffective Assistance of Counsel
 
 
 35
 Reumont appears to allege that his counsel rendered ineffective assistance by not calling certain witnesses at the post-conviction evidentiary hearing and by not informing the court that Ripley had been coerced into testifying.
 
 
 36
 Whether a defendant received ineffective assistance of counsel is a legal question that we review de novo. United States v. Swanson, 943 F.2d 1070, 1072 (9th Cir.1991). A defendant claiming ineffective assistance of counsel must demonstrate (1) that counsel's actions were "outside the wide range of professionally competent assistance," and (2) that the defendant was prejudiced by reason of counsel's actions. Strickland v. Washington, 466 U.S. 668, 687-690 (1984). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Morris v. California, 966 F.2d 448, 454 (9th Cir.1992) (as amended) (citation omitted), cert. denied, 113 S.Ct. 96 (1992).
 
 
 37
 As to the allegations that counsel should have called additional witnesses to testify at the post-conviction evidentiary hearing, Reumont fails to state who those witnesses were or how their testimony would have buttressed his claim that Jeffery was threatened, intimidated, or coerced by the prosecution.
 
 
 38
 As to the allegations that Ripley was coerced into testifying, the record offers no support. In fact, Ripley testified to an incriminating involvement in the prostitution of Adams without invoking his Fifth Amendment privilege against self-incrimination and without a grant of immunity. Accordingly, Reumont has failed to show either that his counsel was ineffective or that he was prejudiced thereby. We reject Reumont's ineffective assistance of counsel claim.
 
 
 39
 X. There Was No Error in Refusing Reumont's Request To Represent Himself
 
 
 40
 Reumont next claims that he was denied due process when the state court refused to allow him to represent himself during the post-conviction evidentiary hearing.
 
 
 41
 "[I]n order to invoke the Sixth Amendment right to self representation, the request must be (1) knowing and intelligent, (2) unequivocal, (3) timely, and (4) not for purposes of delay." United States v. Schaff, 948 F.2d 501, 503 (9th Cir.1991) (citations omitted). A request for self representation is timely if made before meaningful trial proceedings have begun, prior to jury selection, or if made before the jury is empaneled. Id.
 
 
 42
 The post-conviction evidentiary hearing in this case commenced on March 31, 1989. Four witnesses, including Jeffrey and Reumont, testified on that date. The hearing continued on April 12, 1989, at which time Reumont requested to represent himself. Reumont offered no evidence of any conflict between him and his attorney. The state court rejected the request as untimely because four witnesses had already testified and because the California State Supreme Court had requested that counsel be appointed for the hearing. We agree and reject Reumont's right to self representation claim.
 
 
 43
 XI. Reumont's Remaining Claims Do Not Offer Relief
 
 
 44
 Reumont claims that he was denied due process and equal protection at his post-conviction evidentiary hearing because the state court judge who had presided at his trial also presided at the hearing and because the Deputy District Attorney who had prosecuted the case against him testified at the evidentiary hearing. Reumont also claims that he was denied due process and equal protection because the government did not follow certain California Rules of Court by failing timely to file a written return to one of his habeas petitions. Finally, Reumont claims that he was denied due process and equal protection when the prosecution failed to reveal to the jury that Adams had been granted immunity in exchange for favorable testimony against him.
 
 
 45
 Neither the law nor the record supports these claims. There is no requirement that the post-conviction evidentiary hearing be held before a different judge. Because the Deputy District Attorney's conduct with respect to Jeffery was the topic of the post-conviction evidentiary hearing, his testimony was crucial. If the government failed to comply with the California Rules of Court, it was because it had not yet received Reumont's habeas petition. Finally, the record does not support Reumont's claim that the government offered Adams immunity in exchange for her testimony. We reject all of these claims.
 
 CONCLUSION
 
 46
 Accordingly, the district court's dismissal of Reumont's petition for writ of habeas corpus is AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This is true even though, prior to the hearing, Reumont had urged Jeffery, via letter, that "All you have to say is the D.A. pulled you into the court hallway from the courtroom and stated, 'you testify and I'll arrest you for selling drugs and accessory to murder.' "
 
 
 [2]
 The proposed instruction read "The failure of the prosecution to call a material witness which the prosecution might be expected to produce as a witness allows the jury to infer that the testimony of such uncalled witness would have been unfavorable to the prosecution."