992 F.2d 1220
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Vickie G. POMETTA, Petitioner-Appellant,
v.
Susan E. POOLE, Warden, Warden, CA Institution for Women,
Respondent-Appellee.
 No. 91-16653.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 8, 1993.
Decided May 5, 1993.
 
 1
 Before PREGERSON, and BEEZER, Circuit Judges, and Takasugi, District Judge*
 
 
 2
 MEMORANDUM**
 
 
 3
 Vickie G. Pometta appeals the district court's denial of her petition for a writ of habeas corpus. Pometta claims she received ineffective assistance of counsel at her burglary trial due to a conflict of interest with her attorney. Because the district court applied the wrong standard for evaluating a timely raised motion for substitution of counsel based on a potential conflict of interest, we reverse.
 
 
 4
 * At the time Vickie Pometta was charged with residential burglary, charges were pending against her for access-card fraud. Joseph Flax was the court-appointed attorney for Pometta in both. Pometta pleaded guilty in the access-card case and was sentenced in state court to three years. Pometta appealed her access-card fraud conviction, claiming that Flax had provided ineffective assistance of counsel. Specifically, Pometta accused Flax of having deceived her into believing that her guilty plea would lead to a two year sentence.
 
 
 5
 Prior to filing the appeal in the access-card fraud case, Pometta requested that the state trial judge replace Flax as her counsel in the then pending burglary case. Before the request could be considered, the burglary case was reassigned in state court to Judge Walker. By the time Judge Walker conducted a hearing on Pometta's request for new counsel, Pometta had filed her appeal in the access-card case.
 
 
 6
 At the hearing before Judge Walker, Pometta claimed she was not comfortable with Flax and that Flax was "working against [her]." She did not claim Flax had deceived her regarding the plea bargain, nor did she inform Judge Walker that she had filed an appeal based on ineffective assistance of counsel. When questioned by Judge Walker, Flax stated that he was unaware of any reason why he should be relieved as counsel. Judge Walker denied Pometta's request.
 
 
 7
 Two days before trial, Flax himself requested he be relieved from representing Pometta on the ground of a conflict of interest. Flax informed the court that he had just learned of Pometta's ineffective assistance of counsel claim in the access-card appeal. Flax stated that Pometta had refused to show him the documents she had filed. Flax also indicated that he believed Pometta had been unable to articulate her grounds for requesting substitution of counsel at the prior hearing. In a supporting declaration, Flax wrote, "it became obvious to me that Vickie was withdrawing from me and was not communicating openly with me. It became apparent to me that she had lost confidence and trust in me at a critical stage in the burglary prosecution as I was preparing for trial." Flax also told the court that Pometta's allegations in the access-card appeal might result in Flax's appearance as an adverse witness if Pometta later filed a petition for habeas corpus on the ground of ineffective representation of trial counsel.
 
 
 8
 After examining the record in the access-card case, Judge Walker ruled the evidence did not support Pometta's claim of a conflict of interest. According to Judge Walker, because a habeas petition in the access-card case would lack factual support, Flax was not at risk of having to take a position adverse to Pometta.
 
 
 9
 The next day, Pometta filed another pro se pleading, this time claiming that Flax had admitted misrepresenting the terms of her plea bargain in the access-card case. When questioned by Judge Walker at a hearing held the same day, Pometta cited attorney-client privilege and refused to divulge the content of her conversation with Flax. Pometta also claimed that Flax had admitted incompetence in a second confidential conversation.
 
 
 10
 Flax informed the court that the second confidential conversation might involve Pometta's Fifth Amendment privilege. Flax also told the court that he did not remember exactly what he said to Pometta regarding the plea bargain in the access-card case, but that Pometta's claim probably reflected a misunderstanding.
 
 
 11
 After noting that the trial judge had found Pometta's appeal in the access-card case to be "frivolous," Judge Walker found 1) Flax had not misrepresented the plea agreement in the access-card case; 2) the court did not believe Pometta's claim to the contrary; and 3) there was no reason why Flax could not continue as Pometta's attorney in the burglary trial.
 
 
 12
 Following a jury trial, Pometta was convicted. On direct appeal, the state appellate court found that Flax's representation was "vigorous," "thorough," and "effective," and that Flax had "positive rapport" with Pometta during cross-examination.
 
 
 13
 Pometta's then petitioned the district court for a writ of habeas corpus. The district court denied the writ on the grounds that 1) Pometta failed to prove the existence of an actual conflict of interest; and 2) there was no showing that Pometta's burglary trial representation was prejudiced by a conflict of interest.
 
 II
 
 14
 The decision whether to grant or deny a petition for habeas corpus is reviewed de novo. Thomas v. Brewer, 923 F.2d 1361, 1364 (9th Cir.1991). To the extent it is necessary to review findings of fact, the clearly erroneous standard applies. Id. We also review de novo the issue of whether a defendant received ineffective assistance of counsel. United States v. Swanson, 943 F.2d 1070, 1072 (9th Cir.1991).
 
 
 15
 Although a defendant who raises an ineffective assistance of counsel claim is ordinarily required to show prejudice, prejudice is presumed if the alleged violation is based on an actual conflict of interest. United States v. Miskinis, 966 F.2d 1263, 1268 (9th Cir.1992). The presumption of prejudice extends to a conflict between a client and his lawyer's personal interest. Id. at 1269.
 
 
 16
 In a case where the conflict of interest issue arises for the first time on appeal, the defendant must demonstrate that an actual conflict of interest adversely affected counsel's performance. United States v. Sutton, 794 F.2d 1415, 1419 (9th Cir.1986). We have defined "adverse effect" as requiring the defendant to show only that "some effect on counsel's handling of particular aspects of the trial was 'likely.' " Miskinis, 966 F.2d at 1268 (quotation omitted). This test reflects the concern that defendants be prevented "from second guessing on appeal their attorney's trial strategy." Willis v. United States, 614 F.2d 1200, 1203 (1979).
 
 
 17
 The above standards apply in cases involving a post-trial claim of ineffective assistance of counsel. When a conflict claim is raised prior to trial, the conflict need not be actual, nor must any "adverse effect" be proven. Wheat v. United States, 486 U.S. 153 (1988).
 
 
 18
 In Wheat, the defendant moved, pre-trial, to substitute counsel. The government opposed the motion on the ground that the new lawyer had a potential conflict of interest with the defendant. The trial court dismissed the motion. Affirming the trial court, the Supreme Court noted that "a court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel." Id. at 160. Regardless of a defendant's waiver, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Id.
 
 
 19
 The fact that there was no evidence of an actual conflict of interest did not matter. According to the Supreme Court, trial courts may refuse waivers of conflicts of interests "not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Id. at 163.
 
 
 20
 Wheat upheld a trial court's decision to refuse substitution of counsel where there was a "serious potential for conflict." The Court did not state when a trial court is required to prevent a representation tainted by a conflict of interest. However, the Court did hold that a court's duty to assure representation without conflict is so grave as to justify refusing a defendant's counsel of choice. Presumably, the duty to avoid a conflict of interest is even greater when avoiding the conflict actually advances the defendant's right to counsel of her choice. Accordingly, we hold that when the trial court is timely presented with evidence of an actual conflict of interest, and where the defendant requests substitution of counsel on those grounds, denying that request violates the defendant's constitutional right to effective assistance of counsel.
 
 II
 
 21
 Pometta's request for substitution of counsel was timely made prior to trial. The trial court made no mention of the fact that the claim was made too close to the trial date. Instead, Judge Walker apparently believed the conflict was merely "potential" and unlikely to require Flax to appear as an adverse witness in a habeas proceeding. The question we must consider is whether there was an actual conflict of interest.
 
 
 22
 The Supreme Court has been guided by the American Bar Association's Model Rules of Professional Conduct ("MRPC") in defining an impermissible conflict of interest. Wheat, 486 U.S. at 160 (citing ABA Model Code of Professional Responsibility (1980) and the ABA Model Rules of Professional Conduct, Rule 1.7 (1984) for rules governing conflict of interest in multiple representations). Under the MRPC, a conflict can exist even when the adversarial interests involve claims made in a separate and wholly unrelated action. See MRPC Rule 1.7(a) (1987)[1]; Hazard & Hodes, The Law of Lawyering § 1.7:203 (interpreting the MRPC to prevent directly conflicting interests even in wholly unrelated matters on the ground that this would impair the client-lawyer relationship). The fact that Pometta's conflict with her attorney arose from claims made in the access-card case is irrelevant to determining whether that conflict will affect the burglary representation. According to the MRPC, the relationship is presumed to be affected. Id.[2]
 
 
 23
 The merits of the claim creating the conflict are also irrelevant. Even if Pometta's belief that her attorney had deceived her was wholly unjustified, her belief was nevertheless strong enough to lead her to appeal her access-card conviction on that ground. A court's determination that an ineffective assistance of counsel claim is frivolous does not make the interests of the client and the accused attorney any less adverse during the pendency of that claim.
 
 
 24
 Although the effect on the representation is presumed, the record in this case supports that presumption. Flax alerted the court to his belief that Pometta had lost confidence in his representation--a belief justified by the pending appeal for ineffective representation. Flax also told the court that he believed Pometta was no longer "communicating openly" with him. It is undisputed that Pometta did not notify Flax that she was appealing the access-card conviction, a case in which she was represented by Flax, and that she refused to show Flax the documents she had filed in that appeal.
 
 
 25
 Even absent the above evidence of an "adverse effect," the fact that Pometta received "vigorous," "thorough," and "effective" representation during her burglary trial is irrelevant to determining whether the trial court erred in denying Pometta's request for substituted counsel. When a conflict issue is timely made and when the conflict is actual, the defendant need not show prejudice or "adverse effect." Obviously, this would be an impossible standard for defendants to meet prior to trial. Presuming the relationship will be impermissibly affected in such cases comports with the duty of the trial court to ensure defendants receive conflict-free representation.
 
 III
 
 26
 In light of the above, we hold Pometta received ineffective assistance of counsel on the ground that her representation was impermissibly tainted by an actual conflict of interest. It was clear error for the trial court to find otherwise.
 
 
 27
 We REVERSE the judgment of the district court and REMAND with instructions that the petition for writ of habeas corpus be granted.
 
 
 
 *
 The Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Rule 1.7(a) of the MRPC states:
 A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless ... the lawyer reasonably believes the representation will not adversely affect the relationship with the other client, and each client consents after consultation.
 
 
 [2]
 In fact, even the Warden concedes that Pometta's ineffective assistance of counsel claim in the access card case placed her in an adversarial relationship with her attorney in the burglary trial. See Warden's Reply Brief at 16 n. 7 ("The merit of the [separate claim] is entirely irrelevant. Whether or not factually supported, the claim realigns counsel and client as adversaries and puts the attorney at risk, professionally and financially.")